UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Renee Booth, et al., | No. 2:19-cv-01612-KJM-CKD |
| Plaintiffs, | ORDER |
| v. | |
| United States of America, | |
| Defendant. | |

Plaintiffs Renee Booth and Bradley Converse allege K.C., their minor child, received negligent medical care at a federally operated clinic. The parties have reached a settlement agreement and seek approval of that agreement and the creation of a trust. As explained in this order, the court **grants** the motions to approve the settlement agreement and create the trust.

**I.    BACKGROUND**

According to the complaint, K.C.'s health and measurements were normal soon after his birth but then deteriorated. *See* Compl. ¶¶ 5.2–5.16, ECF No. 1. He and his parents claim his doctors and others at the clinic should have recognized the signs of hydrocephalus, *id.* ¶¶ 5.17–5.18, a "condition marked by an excessive accumulation of cerebrospinal fluid," which can lead to "atrophy of the brain," Stedman's Medical Dictionary § 418840 hydrocephalus (Nov. 2014). K.C. and his parents allege he "did not receive appropriate pediatric care and developed permanent brain damage and cerebral palsy." Compl. ¶ 5.18. K.C.'s condition now "requires

1

constant care and frequent weekly appointments." *Id.* ¶ 5.16.  He "continues to suffer pain from the spasticity of cerebral palsy, has decreased hearing in his right ear, and continues to receive weekly OT [occupational therapy] and PT [physical therapy] to improve his muscle tone." *Id.* ¶ 5.18.

K.C.'s parents filed this medical malpractice action on their own and K.C.'s behalf against the United States under the Federal Tort Claims Act. *See id.* ¶¶ 2.1, 6.1. (citing 28 U.S.C. § 2674).  They allege the United States was negligent in several respects, from treatment and care to diagnosis and evaluation to referrals and operations. *See id.* ¶ 6.1.  They seek damages for a variety of harms, including pain and suffering, physical impairments, loss of income and earning capacity, and past and future medical expenses. *See id.* ¶¶ 7.1–7.2.

The United States answered the complaint in November 2019, ECF No. 10, and the case entered discovery, *see generally* Scheduling Order, ECF No. 14.  After the deadline for dispositive motions passed, the parties negotiated a settlement agreement, and plaintiffs moved to appoint a guardian ad litem to review the agreement.  ECF Nos. 31, 36.  The court granted their request and appointed their proposed guardian, an experienced personal injury attorney who has served in the same capacity in several cases, including in many against the United States. *See* Evans Decl. ¶¶ 2–3, ECF No. 36-1; Order (Sept. 16, 2022), ECF No. 37.

In the settlement agreement, the United States agrees to allocate $3 million to an annuity, a special needs trust, and the plaintiffs' fees and costs:

- Half of the total ($1.5 million) will fund an annuity that will pay at least $7,080 per month to K.C. beginning in December 2037, when he will be 25 years old, continuing for his life. *See* Settlement Agreement ¶ 3.b.1, ECF No. 40-1.
- A quarter of the total payment ($750,000) will be paid to plaintiffs' counsel as an attorneys' fee.  Guardian Ad Litem Report at 3, ECF No. 39.

2

1       - About $150,000[1] will cover the plaintiffs' costs and expenses in this action. *See*
2         *id.* at 3 & n.1.
3       - The remainder, approximately $600,000, will fund a special needs trust
4         administered by the Capital First Trust Company. *See id.* at 3; Mot. Establish
5         Trust, ECF No. 41; Trust Agreement, ECF No. 41-1. "A special needs trust is a
6         form of discretionary spendthrift trust designed to preserve public assistance
7         benefits for a disabled beneficiary." 15 Witkin Sum. Cal. Law Wills § 1164; *see*
8         *also* 42 U.S.C. § 1396p(d)(4)(A); Cal. Prob. Code § 3604.

K.C.'s guardian ad litem reviewed the pleadings, the settlement agreement, and K.C.'s medical history, and he spoke to K.C.'s parents and attorneys. *See* Evans Report at 5–6, ECF No. 39. He believes the proposed settlement is in K.C.'s best interest. *Id.* at 5.

Plaintiffs move for approval of the settlement agreement and to create the proposed special needs trust. *See generally* Approval Mot., ECF No. 40; Trust Mot., ECF No. 41. Both motions are unopposed. The court took them under submission without hearing oral arguments.

## II.  SETTLEMENT AGREEMENT

District courts have a duty to protect the interests of minor litigants. *See* Fed. R. Civ. P. 17(c)(2). When an agreement would settle a minor's claims, a district court must "conduct its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)). This District's local rules similarly require the court's approval of any agreement to settle a minor's claims. E.D. Cal. L. R. 202(b).

The Ninth Circuit has instructed district courts reviewing settlement agreements under Rule 17 to consider only "whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." *Robidoux*, 638 F.3d at 1181–82. The court must "evaluate the

---

[1] The guardian ad litem's report refers to two different expense totals. *See id.* at 3 ("The expenses total $152,429.46. . . . Expenses: $142,807.27"). The court's decision does not depend on which total is correct.

3

fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." *Id.* at 1182.

The court is satisfied the proposed settlement agreement meets this standard. The proposed annuity will ensure funds are steadily distributed to K.C. The proposed special needs trust will help to remediate the harms alleged in the complaint. As noted above, K.C's appointed guardian ad litem also has evaluated the proposed agreement, has reviewed the pleadings and K.C.'s medical records, and has spoken to plaintiff's counsel and K.C.'s parents. Guardian's Report at 5–6. He believes the agreement is fair and serves K.C.'s best interests. *Id.* at 5. Based on his experience, the guardian ad litem believes "the likelihood of an appreciably higher verdict in this case is minimal." *Id.* He reports K.C.'s family "wants the case closed and is ready to move on." *Id.*

Although the Ninth Circuit has held that the amount or proportion of an award allocated to others, such as an attorney, is essentially irrelevant to Rule 17(c), *see Robidoux*, 638 F.3d at 1182, federal district courts, including this court, have often specifically approved fee allocations to counsel, sometimes citing the Medical Injury Compensation Reform Act of 1975, *see, e.g.*, *M.S. v. United States*, No. 19-00728A, 2020 WL 526102, at *5 (E.D. Cal. Feb. 3, 2020) (citing *Brewington v. United States*, No. 13-07672, 2015 WL 4511296, at *7 (C.D. Cal. July 24, 2015)); *see also, e.g.*, *J.J. by & through Tyler A. v. Rocklin Unified Sch. Dist.*, No. 19-01404, 2020 WL 363908, at *3 (E.D. Cal. Jan. 22, 2020) (collecting authority). The court therefore notes for purposes of completeness and certainty that it finds the amount of attorneys' fees and costs to be appropriate for this case, given its complexity and duration. That is, the court's decision to approve the settlement agreement does not depend on whether the attorneys' fee and cost allocations are taken into account.

/////

/////

### III. SPECIAL NEEDS TRUST

Under the California Probate Code, a special needs trust may be created if the court determines:

> (1) That the minor or person with a disability has a disability that substantially impairs the individual's ability to provide for the individual's own care or custody and constitutes a substantial handicap.
>
> (2) That the minor or person with a disability is likely to have special needs that will not be met without the trust.
>
> (3) That money to be paid to the trust does not exceed the amount that appears reasonably necessary to meet the special needs of the minor or person with a disability.

Cal. Prob. Code § 3604(b).

These requirements are satisfied in this case. When hydrocephalus is not correctly treated, it can lead to serious brain injuries, as in K.C.'s case. According to K.C.'s guardian ad litem, K.C.'s condition was not treated before it caused brain damage, cerebral palsy and hearing loss. Guardian's Report at 2. K.C. requires ongoing physical and occupational therapy. *Id.* at 3. For these reasons, the court finds the amount of the money proposed to be paid into the trust is not greater than necessary to meet K.C.'s needs.

### IV. CONCLUSION

For the reasons above, the court **grants** the motions to approve the settlement agreement and create a special needs trust (ECF Nos. 40 and 41). The court **adopts** the parties' proposed orders, which it will issue in separate filings concurrently with this order.

IT IS SO ORDERED.

DATED: January 11, 2023.

CHIEF UNITED STATES DISTRICT JUDGE